UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
**YOLANDA NUNEZ,**

                              **Case No.:**

            **Plaintiff,**

    -against -                              **COMPLAINT**

**NEW YORK CITY HOUSING AUTHORITY,**

            **Defendant.**
--------------------------------------------------------------------------X

    Plaintiff, by and through her attorneys, Nesenoff & Miltenberg, LLP, whose offices are located at 363 Seventh Avenue, 5th Floor, New York, New York 10001, alleges upon knowledge with respect to herself, and upon knowledge, information and belief as to all other matters, as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff Yolanda Nunez ("Plaintiff" or "Mrs. Nunez") dutifully and loyally served her employer, the New York City Housing Authority ("Defendant") for more than five years. As one of the few, if not the only, women in her department, Plaintiff established herself as a capable employee and quickly garnered the respect of her male colleagues. Despite her exemplary performance over the years, however, Defendant sat back and permitted its supervisory staff to torment Mrs. Nunez with crass sexual remarks, belittling nicknames, and repeated baseless disciplines. Adding insult to injury, when Mrs. Nunez attempted to stand up for herself and reported such discriminatory conduct to Defendant's Department of Equal Employment, the office charged with preventing and responding to such despicable behavior, she was swiftly retaliated against and terminated, and divested itself of any obligation to investigate her complaints.

2. This is a civil action brought on behalf of Plaintiff against Defendant New York City Housing Authority ("Defendant"), for gender discrimination and retaliation in violation of the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983, the New York City Human Rights Law ("CHRL"), and the New York State Human Rights Law ("SHRL"), along with any and all other causes of action which can be reasonably inferred from the facts as set forth below.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form a part of the same case or controversy between Plaintiff and Defendant.

5. Venue is proper in this case pursuant to 28 U.S.C. § 1391 because Defendant is located in New York County, New York which is in the Southern District of New York.

6. All conditions precedent to filing the instant action have been fulfilled. On or about November 2, 2017, Plaintiff served a timely Notice of Claim upon Defendant. Defendant did not notice Plaintiff for an examination pursuant to General Municipal Law 50(h) and more than ninety (90) days have elapsed since Defendant was served with Plaintiff's Notice of Claim.

## PARTIES

7. Plaintiff is a Hispanic female who currently resides in Bronx County, New York.

8. At all times relevant, Plaintiff was an "employee" of Defendant as that term is defined by all applicable Federal, State, and Local laws.

9. Upon information and belief, at all times relevant, Defendant was and is a municipal corporation incorporated under the laws of the State of New York, with a principal place of business located at 250 Broadway, 9th Floor, New York, New York 10007.

10. At all times relevant, Defendant was Plaintiff's "employer" as that term is defined by all applicable Federal, State, and Local laws.

## FACTUAL ALLEGATIONS

### Mrs. Nunez Commences Work in a 'Man's World'

11. Mrs. Nunez commenced employment with Defendant as a Community Service Aid on or about January 9, 2012. While she worked as a community service aid, Mrs. Nunez worked with a partner, Vincenzo (last name unknown) ("Partner Vincenzo").

12. Approximately one year later, Mrs. Nunez assumed a full-time exterminator position with Defendant and continued to work alongside Partner Vincenzo.

13. Notably, Mrs. Nunez was one of the few, if not the only, female exterminators at that time.

14. Mrs. Nunez quickly proved herself a dedicated, hard-working, and capable employee.

15. Indeed, Plaintiff's supervisor, Pedro Rodriguez ("Supervisor Rodriguez"), never complained about Mrs. Nunez's performance and often complimented Mrs. Nunez's professionalism.

### Defendant Improperly Appoints a New Acting Supervisor

16. In or around the Summer of 2016, Defendant (upon information and belief, improperly) delegated supervisory responsibilities to one of its senior exterminators, James Barksdale, and afforded him the title "Acting Supervisor" ("Acting Supervisor Barksdale").

17. Acting Supervisor Barksdale was endowed with the authority and responsibility to, among other things: (i) delegate work assignments to the exterminators, (ii) take and maintain attendance records for the exterminators, (iii) oversee the exterminators' work performance, and (iv) discipline the exterminators.

**Acting Supervisor Barksdale Shows an Immediate Disdain for Plaintiff – the Only Female Exterminator**

18. Acting Supervisor Barksdale immediately targeted Mrs. Nunez.

19. Upon information and belief, Acting Supervisor Barksdale resented Mrs. Nunez as the only female exterminator and did not approve of a female working as an exterminator.

20. Acting Supervisor Barksdale repeatedly found excuses to discipline Plaintiff for frivolous alleged infractions, resulting in numerous unfounded disciplinaries from Defendant.

21. By way of example, on or about September 19, 2016, Acting Supervisor Barksdale harassed Mrs. Nunez while she was out in the field with Partner Vincenzo, and falsely accused Plaintiff of failing to do her job.

22. Acting Supervisor Barksdale harassed and screamed at Plaintiff, and only Plaintiff, about allegedly failing to complete an assignment, and complained to Defendant's higher managers about Plaintiff's alleged poor performance on the job.

23. By way of further example, on or about October 18, 2016, Defendant issued Mrs. Nunez a written counseling memo accusing Mrs. Nunez of failing to "travel swipe" while out in the field.

24. Notably, Mrs. Nunez had been keeping track of her time the same way for the prior four (4) years and it had never before been a problem before Acting Supervisor Barksdale was appointed.

4

25. Even more notable, Partner Vincenzo, who had "swiped" the same way Plaintiff had been doing for year, was NOT similarly issued any written discipline.

26. Further, on or about November 28, 2016, Acting Supervisor Barksdale mandated that Mrs. Nunez and Partner Vincenzo separate, after working together for more than four (4) years, and ordered Mrs. Nunez to work with the new "clean out crew."

27. While Mrs. Nunez was working with the clean out crew, Acting Supervisor Barksdale frequently, in fact almost daily, made surprise visits to the housing developments Mrs. Nunez was assigned to and told the superintendents to "write her up."

28. Acting Supervisor Barksdale would not let up.

29. On or about June 20, 2017, Plaintiff was accidentally sprayed on her shirt with pesticide. Plaintiff, being an experienced exterminator, knew the danger of pesticide exposure and immediately removed her uniform shirt to clean up and change into clean clothing.

30. Plaintiff changed into a regular, non-uniform shirt. Notably, especially during the summer months, most if not all of Plaintiff's male co-workers wore tank top style shirts instead of their regular uniform without incident.

31. When Acting Supervisor Barksdale saw Plaintiff wearing a non-uniform shirt, however, Plaintiff was immediately issued another write-up.

32. By way of even further example, on or about July 20, 2017, Plaintiff received another baseless counseling memo which falsely accused Mrs. Nunez of falsifying records, taking an unauthorized break and sleeping in her vehicle.

5

33. When Mrs. Nunez was handed her counseling memorandum by Frank Cole, one of Defendant's higher-ranking supervisors ("Supervisor Cole"), she immediately protested and refused to sign it as the memorandum contained blatant lies.

34. Acting Supervisor Barksdale harassed and micro-managed Mrs. Nunez daily and taunted that he was going to get her fired.

**Acting Supervisor Barksdale Looks at Plaintiff as His Possession and Shames Partner Vincent for "Not F*cking" Mrs. Nunez Soon Enough**

35. In addition to targeting Mrs. Nunez with disciplines, Acting Supervisor Barksdale further patronized Plaintiff and made lewd remarks directly related to Mrs. Nunez's gender.

36. Indeed, Acting Supervisor Barksdale repeatedly used belittling names when speaking about Plaintiff, and consistently referred to Mrs. Nunez as "baby."

37. Acting Supervisor Barksdale further looked at Mrs. Nunez like a possession. He remarked that anytime he works with a woman – such as Plaintiff – he views that woman as "his."

38. Further, in or around April 2017, Acting Supervisor Barksdale began making lewd references to Plaintiff and shared his desire to sleep with Mrs. Nunez.

39. Indeed, Acting Supervisor Barksdale frequently shamed Partner Vincenzo for remaining only friends with Plaintiff and not sleeping with Mrs. Nunez during their professional partnership.

40. Specifically, Acting Supervisor Barksdale declared that *"[Partner Vincenzo] is stupid if he didn't f*ck her (referring to Plaintiff). I (meaning Acting Supervisor Barksdale) would have f*cked her a long time ago."*

41. Plaintiff was utterly disgusted by Acting Supervisor Barksdale's comments and dismayed that his behavior seemed not only to continue, but to worsen.

6

**Defendant's Managerial Staff Continue to Treat Mrs. Nunez as a 'Lesser' Person**

42. Acting Supervisor Barksdale was not the only supervisory figure that referred to Mrs. Nunez in a chauvinistic manner.

43. Indeed, Mr. Baker, Supervisor Rodriguez's superior, referred to Mrs. Nunez simply as "the girl" while showing Plaintiff's male colleagues the respect of calling them by name.

**Plaintiff Finally Reaches her Breaking Point and
Reports the Discrimination to Defendant's Equal Employment Office**

44. Plaintiff's work environment became so hostile and harmful to her mental and emotional health that she began treating with a mental health counselor.

45. Eventually, Mrs. Nunez could not keep silent any longer and, on July 26, 2017, she lodged a formal complaint of discrimination and harassment with Defendant's Department of Equal Employment ("DOEE").

46. Mrs. Nunez met with Defendant's Investigator, Onya Brinson ("Investigator Brinson"), and relayed the sexual comments Acting Supervisor Barksdale had used, as well as the many instances of harassment and discrimination she had been subjected to.

47. In response, Investigator Brinson told Plaintiff she would look into the matter.

48. In addition, Investigator Brinson issued a memorandum to Supervisor Rodriguez informing him that Plaintiff had been to an appointment with the DOEE on July 26, 2017.

49. Thereafter, on August 16, 2017, Investigator Brinson sent a letter to Plaintiff confirming her complaint of discrimination against Acting Supervisor Barksdale.

50. Notably, Investigator Brinson also sent a letter regarding Plaintiff's complaints of discrimination and harassment to Acting Supervisor Barksdale on August 16, 2017.

**Defendant Harshly and Unlawfully Criticizes Plaintiff and
Terminates Her Employment in Retaliation for her Complaint of Discrimination**

51. Following her complaint of harassment and discrimination, Defendant immediately retaliated against Mrs. Nunez.

52. Indeed, on August 18, 2017, just twenty-three (23) days after being notified of Plaintiff's meeting with the DOEE and a mere two days after the official notices of Plaintiff's complaint were released, Defendant issued Plaintiff her very first negative performance evaluation in over five (5) years.

53. Plaintiff confronted Supervisor Rodriguez about the performance evaluation and demanded to know the basis for it.

54. When confronted, Supervisor Rodriguez could not give Mrs. Nunez any explanation for the negative performance evaluation except to say that he was directed to issue Plaintiff a negative evaluation by Acting Supervisor Barksdale and Supervisor Cole.

55. Curiously, in the negative evaluation, Defendant accused Plaintiff of taking "excessive time off." Defendant based this criticism on Plaintiff's absence from work due to a physical injury during the week of July 24-July 31. Notably, Plaintiff was rightfully absent from work pursuant to doctor's orders.

56. Accordingly, Defendant unlawfully used Plaintiff's injury and medical condition against her as a basis for issuing her a negative performance evaluation.

57. Thereafter, on September 6, 2017, Defendant terminated Plaintiff's employment.

58. Specifically, Plaintiff was called into Supervisor Rodriguez's office where she was confronted by two men she had never met before and unceremoniously handed termination papers. Plaintiff was told to sign the papers and hand in her I.D. and equipment.

59. When Plaintiff asked why she was being terminated, the men told her they did not know and told to call her union and Human Resources. Thereafter, one man told Plaintiff "I'm only doing what I'm told, don't shoot the messenger."

## CLAIMS FOR RELIEF
## AS AND FOR THE FIRST CAUSE OF ACTION

*(Gender Discrimination – Disparate Treatment in Violation of the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983, the NYCHRL, and the NYSHRL)*

60. Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

61. Plaintiff is a female and is therefore a member of a protected class.

62. Plaintiff was qualified to work as an employee for Defendant and she satisfactorily performed the duties required by the position she held with Defendant.

63. As set forth in detail above and herein, Defendant subjected Plaintiff to discrimination and disparate treatment on the basis of her gender.

64. The discrimination that Plaintiff suffered while employed by Defendant severely affected the terms and conditions of her employment.

65. By reason of Defendant's repeated violations of Plaintiff's statutory and constitutional rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

66. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

67. Accordingly, Defendant discriminated against Plaintiff on the basis of her gender by virtue of treating her less well than her similarly situated colleagues outside of her protected class in violation of Federal, State, and Local laws.

## AS AND FOR THE SECOND CAUSE OF ACTION
*(Gender Discrimination – Hostile Work Environment in Violation of the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983, the NYCHRL, and the NYSHRL)*

68. Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

69. Plaintiff is a female and is therefore a member of a protected class.

70. Plaintiff was qualified to work as an employee for Defendant and she satisfactorily performed the duties required by the position she held with Defendant.

71. As set forth in detail above and herein, Defendant subjected Plaintiff to discrimination on the basis of her gender and a hostile work environment on the basis of her gender.

72. The discrimination Plaintiff suffered while employed by Defendant was severe, pervasive, unwelcome by Plaintiff, and would be offensive to a reasonable person.

73. The discrimination that Plaintiff suffered while employed by Defendant severely affected the terms and conditions of her employment.

74. By reason of Defendant's repeated violations of Plaintiff's statutory and constitutional rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

75. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

76. Accordingly, Defendant discriminated against Plaintiff on the basis of her gender by virtue of subjecting Plaintiff to a hostile work environment in violation of Federal, State, and Local laws.

### AS AND FOR A THIRD CAUSE OF ACTION
*(Retaliation in violation of the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983, the NYCHRL, and the NYSHRL)*

77. Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

78. As set forth in detail above, Defendant subjected Plaintiff to discrimination, a hostile work environment, and an atmosphere of adverse employment actions and decisions because of her gender in violation of Plaintiff's statutory and constitutional rights.

79. Plaintiff complained to Defendant regarding the discrimination she was subjected to during her employment.

80. In response to Plaintiff's complaint, Defendant subjected Plaintiff to a series of adverse employment actions including, but not limited to subjecting Plaintiff to an increasingly hostile work environment, disproportionately disciplining Plaintiff, and ultimately terminating Plaintiff's employment.

81. Defendant, unlawfully and without cause, retaliated against Plaintiff as a direct result of Plaintiff complaint of discrimination and a hostile work environment.

82. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff lost substantial income and benefits associated with her employment.

83. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-

workers, damage to her personal and professional reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

84. Accordingly, Defendant retaliated against Plaintiff in violation of Federal, State, and Local laws.

## DEMAND FOR JURY TRIAL

85. Pursuant to FRCP 38(b), Plaintiff demands a trial by jury on all claims.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Plaintiff demands judgment against Defendant as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States and New York State laws;

b. Preliminary and permanent injunctions against Defendant and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c. An order restraining Defendant from any retaliation against Plaintiff for participation in any form in this litigation;

d. All compensatory damages that Plaintiff has sustained as a result of the Defendant's unlawful discriminatory conduct, including back pay, front pay, damages to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment, emotional distress damages, general and special damages for lost compensation and employee benefits that she would have received but for the Defendant's conduct, and any other out-of-pocket losses that Plaintiff has incurred or will incur;

  e. Awarding Plaintiff her costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

  f. Pre-judgment and post-judgment interest, as provided by law; and

  g. Any other and further relief as this Court finds just, necessary and proper.

**Dated: New York, New York**
   **March 15, 2018**

           **NESENOFF & MILTENBERG, LLP.**
           *Attorneys for Plaintiff*


       **By:** */s/ Andrew Miltenberg*
          **Andrew T. Miltenberg, Esq.**
          **Gabrielle M. Vinci, Esq.**
          **363 Seventh Avenue, 5th Floor**
          **New York, New York 10001**
          **(212) 736-4500**
          **amiltenberg@nmllplaw.com**
          **gvinci@nmllplaw.com**