UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YOLANDA NUNEZ,

                         Plaintiff,

            -v.-

NEW YORK CITY HOUSING AUTHORITY,

                         Defendant.

18 Civ. 2369 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

        Plaintiff Yolanda Nunez, a Hispanic woman and employee of Defendant
New York City Housing Authority, brings this action for violations of 42
U.S.C. § 1983; the New York State Human Rights Law, N.Y. Exec. Law §§ 290-
97 (the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin.
Code §§ 8-107 to 8-131 (the "NYCHRL").  Plaintiff alleges that she was
subjected to discrimination and a hostile work environment on account of her
sex, and that when she filed a complaint alleging such unlawful conduct, she
was terminated.  Defendant, for its part, has moved for summary judgment,
arguing that Plaintiff has failed to adduce evidence supporting municipal
liability under § 1983 and has similarly failed to raise a genuine dispute of
material fact as to whether Plaintiff experienced discrimination, retaliation, or a
hostile work environment as defined by the NYSHRL or the NYCHRL.  For the
reasons set forth in the remainder of this Opinion, the Court grants
Defendant's motion for summary judgment as to Plaintiff's federal claims and
dismisses without prejudice Plaintiff's state and local claims.

## BACKGROUND[1]

### A.    Factual Background

Plaintiff, a woman, was an employee of Defendant from January 2012 until her termination on September 6, 2017.  (Pl. Opp. 56.1 ¶¶ 2, 2.1).  Plaintiff worked as a housing exterminator — preventing, controlling, and eliminating insects, vermin, and other pests from buildings and surrounding areas — and beginning in October 2013, she was assigned to the Bronx Property Management Department ("BPMD").  (*Id.* at ¶¶ 20-23).  Plaintiff was not the only female housing exterminator in the BPMD (*id.* at ¶ 24), but she was one of few women employed there (*id.* at ¶ 24.1).

Throughout the duration of Plaintiff's employment, her immediate supervisor was Pedro Rodriguez.  (Pl. Opp. 56.1 ¶ 30).  However, Plaintiff asserts that James Barksdale also functioned as "an acting supervisor" beginning in early 2016.  (*Id.* at ¶ 30.2).  According to Plaintiff, Barksdale, as

---

[1]     The facts set forth in this Opinion are drawn from Plaintiff's Local Rule 56.1 Counter-Statement of Material Facts ("Pl. Opp. 56.1" (Dkt. #50)); the Declaration of Yolanda Nunez in Opposition to Defendant's Motion for Summary Judgment ("Nunez Decl." (Dkt. #51)); and the exhibits attached to the Declaration of Gabrielle M. Vinci, Esq. in Opposition to Defendant's Motion for Summary Judgment ("Vinci Decl., Ex. [ ]" (Dkt. #52)).  For ease of reference, Defendant's opening brief is referred to as "Def. Br." (Dkt. #41), while Plaintiff's opposition brief is referred to as "Pl. Opp." (Dkt. #53).

Citations to a party's 56.1 Statement incorporate by reference the documents cited therein.  Where facts stated in a party's 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court finds such facts to be true.  *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a corresponding numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent ... controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

acting supervisor, "was endowed with the authority to assign exterminators work tickets, oversee exterminators' work, and supervise exterminators on site." (*Id.*).  Defendant, on the other hand, asserts that Barksdale's responsibilities included acting as a dispatcher, distributing work assignments to other exterminators, and notifying other exterminators of their daily assignments.  (*Id.* at ¶ 32).  Moreover, Defendant asserts that Barksdale only assumed such responsibilities when Rodriguez was out of the office.  (*Id.*).  Plaintiff admitted that Barksdale only gave her daily assignments when Rodriguez was out of the office, and that Barksdale never issued her any counseling memoranda or completed any of her performance evaluations.  (*Id.* at ¶¶ 36-37).  Barksdale did not have authority to discipline, issue counseling memoranda to, or complete performance evaluations for other exterminators. (*Id.* at ¶ 35).

Plaintiff's main contention is that Barksdale referred to her as "baby" (*see, e.g.*, Pl. Opp. 56.1 ¶ 70), but both the duration and frequency of this conduct is unclear from the record.  In her sworn Declaration, Plaintiff states that Barksdale referred to her as "baby" in early 2016, while he was assigning work tickets in the main office.  (Nunez Decl. ¶ 8).  However, Plaintiff testified during her deposition that Barksdale had not called her "baby" prior to October 2016.  (Vinci Decl., Ex. 2 ("Nunez Dep.") at 56:5-8).  In a similar vein, Plaintiff testified that Barksdale called her "baby" "[p]ractically all the time he saw me" (*id.* at 36:6-8), but then later testified that Barksdale did not refer to her as "baby" when she was in the field with her partner (*id.* at 56:21-23), nor

during the period from November 2016 to May 2017 (*id.* at 64:7-13).  Plaintiff

did testify, though, that from May 2017 through the end of July 2017,

Barksdale called her "baby" once or twice a week, when he would show up at

the locations at which Plaintiff was working.  (*Id.* at 67:2-25).

In addition to the above, Henry Botchway, one of Plaintiff's colleagues,

told Plaintiff about another of Barksdale's inappropriate remarks.  (Pl. Opp.

56.1 ¶ 77).  Specifically, Barksdale asked Botchway about Plaintiff's

relationship with her work partner, and told Botchway that if he had been

Plaintiff's partner, he would have had sex with her a long time ago.  (*Id.*).

Barksdale denies ever having made such a statement to Botchway.  (*Id.* at

¶ 82).

Apart from Barksdale, Plaintiff claims that Michael Baker, an

administrator for the BPMD, referred to her as "the girl" while Plaintiff was

assigned to Millbrook Houses between November 2016 and January 2017.  (Pl.

Opp. 56.1 ¶¶ 85-86).  More precisely, co-workers allegedly told Plaintiff that

Baker would refer to her as "the girl" when inquiring as to her location.  (*Id.* at

¶ 87).  However, Plaintiff never heard Baker call her "the girl" or "a girl" herself.

(*Id.* at ¶ 88).  Barksdale and Baker are the only two employees who are alleged

to have made any inappropriate or offensive comments about Plaintiff.  (*Id.* at

¶ 91).

Prior to her termination, Plaintiff received several counseling memoranda

regarding her conduct in the workplace.  (Pl. Opp. 56.1 ¶¶ 39, 49, 53).  The

first memorandum, issued by Rodriguez on October 18, 2016, concerned

4

Plaintiff's failure to comply with Defendant's travel swipe procedures between August 8, 2016, and October 3, 2016.  (*Id.* at ¶ 39).  Plaintiff asserts that her colleagues did not receive any corrective or disciplinary action for failing to follow the appropriate procedures, although Rodriguez disputes this assertion. (*Id.* at ¶ 42).  The second memorandum, issued by Mayra Vigo on June 20, 2017, regarded Plaintiff being out of uniform and failing to sign the daily location log.  (*Id.* at ¶ 49).  Plaintiff asserts that other, male exterminators also worked out of uniform and were not disciplined for such conduct.  (*Id.* at ¶ 51). Finally, Plaintiff received her third memorandum, issued by Francis Koelle on July 20, 2017, for falsifying two work orders on July 6, 2017.  (*Id.* at ¶ 53). Although Barksdale did not issue any of the above memoranda to Plaintiff, Plaintiff asserts that Barksdale, for various reasons, was the driving force behind all three memoranda.  (Nunez Decl. ¶¶ 24-26, 40-41, 55).

On July 20, 2017, Melania Allen, Director of the BPMD, requested Plaintiff's termination.  (Pl. Opp. 56.1 ¶ 56).  A secretary at the BPMD emailed the termination request to Marla Edmondson, an employee relations coordinator in Defendant's human resources department, on July 26, 2017, at 10:06 a.m.  (*Id.* at ¶ 57).  Edmondson communicated with management at the BPMD between July 27, 2017, and August 30, 2017, gathering additional information that was needed to process the termination request.  (*Id.* at ¶ 58). The "complete package" for the termination request was received on September 1, 2017.  (*Id.* at ¶ 59).

Meanwhile, Plaintiff met with Onya Brinson, an investigator with Defendant's Department of Equal Opportunity ("DEO"), on July 26, 2017, from 10:27 a.m. to 12:24 p.m.  (Pl. Opp. 56.1 ¶ 61).  After Plaintiff's meeting with Brinson, Plaintiff filed a discrimination complaint with the DEO.  (*Id.* at ¶ 62).  Following the filing of this complaint, on August 18, 2017, Plaintiff received her only unsatisfactory performance evaluation.  (*Id.* at ¶ 63.1).  Plaintiff's termination went into effect on September 6, 2017.  (*Id.* at ¶ 60).

## B.    Procedural Background

Plaintiff filed her Complaint on March 16, 2018.  (Dkt. #1).  Defendant filed its Answer on May 14, 2018.  (Dkt. #11).  On May 16, 2018, this action was referred to mediation.  (Dkt. #12).  Two mediation sessions were held — the first on June 27, 2018, and the second on July 27, 2018.  (Minute Entries for June 27, 2018, and July 27, 2018).  On August 6, 2018, the Court scheduled an initial pretrial conference in this action for September 11, 2018.  (Dkt. #15).  That conference was then adjourned twice (Dkt. #17, 19), and was eventually rescheduled for October 25, 2018.  However, the conference was never held, and a Case Management Plan and Scheduling Order was entered in lieu of a conference.  (Dkt. #23).

On June 13, 2019, the parties appeared for a post-fact discovery conference, at which time the Court scheduled briefing for Defendant's motion for summary judgment.  (Minute Entry for June 13, 2019).  Defendant filed its motion for summary judgment, as well as accompanying memorandum, Local Rule 56.1 Statement, and declarations on November 15, 2019.  (Dkt. #40-45).

Plaintiff filed her opposition papers on January 13, 2020 (Dkt. #50-53), and

Defendant filed its reply papers on February 4, 2020 (Dkt. #54-55).

## DISCUSSION

**A.     The Court Grants Summary Judgment as to Plaintiff's § 1983 Claims**

**1.     Summary Judgment Under Fed. R. Civ. P.  56**

Under Federal Rule of Civil Procedure 56(a), a "court shall grant

summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."

Fed R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986);

*Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).[2]  A genuine

dispute exists where "the evidence is such that a reasonable jury could return

a verdict for the nonmoving party."  *Fireman's Fund Ins. Co.* v. *Great Am. Ins.*

*Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks

and citation omitted).  A fact is "material" if it "might affect the outcome of the

suit under the governing law[.]"  *Anderson*, 477 U.S. at 248.  "In assessing the

record to determine whether there is a genuine issue to be tried, we are

required to resolve all ambiguities and draw all permissible factual inferences

in favor of the party against whom summary judgment is sought."  *Gorzynski* v.

---

[2]     The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word – genuine 'issue' becomes genuine 'dispute.' 'Dispute better reflects the focus of a summary-judgment determination.").  This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refers to "genuine issues of material fact."

*JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (citing *Anderson*, 477 U.S. at 255).

While the moving party "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,'" *ICC Chem. Corp.* v. *Nordic Tankers Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Catrett*, 477 U.S. at 323), the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Brown* v. *Henderson*, 257 F.3d 246. 252 (2d Cir. 2001). Rather, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Parks Real Estate Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher* v. *Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted)). "Though [the Court] must accept as true the allegations of the party defending against the summary judgment motion ... conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak* v. *City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996) (internal citation omitted) (citing *Matsushita*, 475 U.S. at 587; *Wyler* v. *United States*, 725 F.2d 156, 160 (2d Cir. 1983)); *accord Hicks*, 593 F.3d at 166. "Where the record taken as a whole could not lead a rational trier of fact to find

for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "If the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). It should also be noted that "the principles governing admissibility of evidence do not change on a motion for summary judgment. ... [O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Presbyterian Church of Sudan* v. *Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (internal quotation marks omitted) (quoting *Raskin* v. *Wyatt Co.*, 125 F.3d 55, 65-66 (2d Cir. 1997)).

### 2.    Plaintiff Has Abandoned Her Federal Claims

Plaintiff's Complaint pleads federal claims for discrimination, retaliation, and hostile work environment under 42 U.S.C. § 1983. (*See generally* Dkt. #1). Since Defendant is a municipal entity, Plaintiff would need to show that Defendant had implemented "a policy statement, ordinance, regulation, or decision," or an informal governmental "custom," in order to establish liability under § 1983. *See Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Defendant, for its part, has argued that Plaintiff has failed to produce evidence that connects any of Barksdale's or Baker's actions to a custom, policy, or practice of Defendant, and therefore Plaintiff's federal claims fail as a matter of law. (Def. Br. 8).

Plaintiff's opposing papers fail to engage with this argument, and indeed seem to ignore the fact that Plaintiff ever brought federal claims. (*See e.g.,* Pl.

Opp. 9 (arguing that Plaintiff has pleaded claims pursuant to the NYSHRL and the NYCHRL, and not mentioning § 1983)).  Although Plaintiff does not expressly abandon her federal claims, the clear inference from the absence of any mention of § 1983 from her opposing papers is that her claims pursuant to that statute have been abandoned.  *See Jackson* v. *Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").  On this basis alone, summary judgment should be granted as to Plaintiff's § 1983 claims.

Even if Plaintiff's federal claims were not deemed abandoned, a grant of summary judgment in Defendant's favor would still be appropriate.  In order to establish liability under *Monell*, a plaintiff must show either: (i) "a formal policy endorsed by the municipality"; (ii) actions directed by the government's 'authorized decisionmakers' or 'those who establish governmental policy'"; (iii) "a persistent and widespread practice that amounts to a custom of which policymakers must have been aware"; or (iv) "a constitutional violation resulting from policymakers' failure to train municipal employees." *Deferio* v. *City of Syracuse*, 770 F. App'x 587, 590 (2d Cir. 2019) (summary order) (internal citations and brackets omitted).

Plaintiff certainly cannot show that Defendant had any formal policy that caused her constitutional injury, because it is undisputed that Defendant's policies expressly prohibit discrimination and retaliation.  (Pl. Opp. 56.1 ¶¶ 3-4).  Plaintiff similarly has not alleged that Barksdale's and Baker's conduct was

a result of Defendant's failure to train its employees, nor that their conduct constituted a persistent and widespread custom of which Defendant's policymakers were aware.  Finally, neither Barksdale nor Baker qualifies as a "final policymaker," *see Byvalets* v. *N.Y.C. Hous. Auth.*, No. 16 Civ. 6785 (CBA), 2017 WL 7793638, at *15 (E.D.N.Y. July 28, 2017) ("[T]he Second Circuit has concluded that individual NYCHA supervisors are not final policymakers."); *Chin* v. *N.Y.C. Hous. Auth.*, 575 F. Supp. 2d 554, 565 (S.D.N.Y. 2008) ("[T]he NYCHA's three-person Board of Commissioners and the Commissioner of Citywide Administrative Services are the only people expressly granted final policymaking authority."), so their individual actions cannot by themselves give rise to municipal liability.  Therefore, even ignoring Plaintiff's abandonment of her federal claims, it is clear that that there is no genuine dispute as to whether municipal liability exists.  The Court grants summary judgment as to Plaintiff's federal claims.

**B.    The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's NYSHRL and NYCHRL Claims**

With the Court's grant of summary judgment as to Plaintiff's federal claims, all that remains are Plaintiff's claims pursuant to state and local law. Defendant urges the Court to exercise its discretion under 28 U.S.C. § 1367(c) and decline to exercise supplemental jurisdiction over these remaining claims. (Def. Br. 9-10).  Plaintiff offers no opposition to this request.  Given that no federal claims remain, the Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining NYSHRL and NYCHRL claims.  *See Shi* v. *N.Y. Dep't of State*, 393 F. Supp. 3d 329, 343 (S.D.N.Y. 2019) ("In the usual

11

case in which all federal-law claims are eliminated before trial, the balance of factors … will point toward declining to exercise jurisdiction over the remaining state-law claims." (internal brackets omitted) (citing *Kolari* v. *New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006))).  Those claims are dismissed without prejudice, and Plaintiff is free to pursue them further in state court.

## CONCLUSION

For the reasons set forth in this Opinion, Defendant's motion for summary judgment is GRANTED as to Plaintiff's federal claims.  The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims, and therefore DISMISSES those claims without prejudice.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:   April 17, 2020
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge